No. A-CV-13-89
# Supreme Court of the Navajo Nation

**In the Matter of: Certified Questions I**
**WR-CV-99-89**
**The Navajo Nation, et al., Plaintiffs,**
**v.**
**Peter MacDonald, et al., Defendants.**
**Decided March 31, 1989**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Per curiam.

This is a decision on one of the four questions certified to this Court by the Window Rock District Court. The question is whether the Chairman of the Navajo Tribal Council has the legal authority to appoint judges solely on his own initiative. The answer is no.

### I

On March 29, 1989, Judge Robert Yazzie of the Window Rock District Court certified four questions to this Court for decision. On March 30, 1989, we discussed the four questions and accepted them as proper questions for decision in light of *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 5 (1984) .

We also agreed that the question set forth above can be decided without benefit of briefs from the parties. The laws necessary to answer the question are clear on their faces.

### II

The laws needed to answer the question, and specifically the laws governing appointment of judges to the Navajo bench, are found in Title 7 and are as follows:

§ 251. Appointment

> The District Courts of the Navajo Nation shall consist of such judges as shall be appointed by the Chairman of the Tribal Council, with confirmation by the Tribal Council.

§ 355. Appointment; term of office

(a) The Chairman of the Tribal Council shall appoint the Chief Justice, Associate Justices, and District Court Judges with confirmation by the Navajo Tribal Council from among those recommended by the Judiciary Committee of the Navajo Tribal Council.

§ 354. Qualifications for judicial appointment

The following standards and qualifications shall apply to all judicial appointments to the Courts of the Navajo Nation:

(1) Member of Navajo Tribe and Age. An applicant shall be an enrolled member of the Navajo Tribe of Indians and shall be over thirty (30) years of age.

(2) Criminal Convictions. An applicant shall have never been convicted of a felony, or within the year just past, of a misdemeanor.

(3) Education/Training. Each applicant shall be a high school graduate. Higher education or technical training with A.A., B.A., or B.S. degrees shall be preferred.

(4) Experience. Each applicant shall have at least two (2) years work experience in law related area and have a working knowledge of Tribal, federal and state laws. Those applicants with experience working with the Navajo Nation Courts or with state and federal courts will be preferred.

(5) Knowledge in Navajo Culture and Tradition. Each applicant must be able to speak both Navajo and English, and have some knowledge of Navajo culture and tradition. The applicant must be able to demonstrate:

(A) an understanding of the clan system; and

(B) an understanding of religious ceremonies; and

(C) an appreciation of the traditional Navajo life-style.

(6) Health. Each applicant shall produce a certificate of good health from a licensed physician.

(7) Driver's License. Each applicant shall possess a valid driver's license.

(8) No Physical Addictions. In addition to the requirement of a medical examination pursuant to subsection (6) above, each applicant must attest that he or she has no physical addictions.

(9) Writing Sample. Upon initial screening of applicants by the Judiciary Committee, those applicants selected shall submit a writing sample that illustrates the applicant's ability to clearly show organization and communicative abilities.

(10) Ethics. Each applicant shall show that he or she has neither present nor past conflicts of interests that would have the appearance of partiality or bias in

cases brought in the courts of the Navajo Nation. Each applicant must demonstrate an impartial background that will indicate neutrality and fairness for proper decision making.

(11) References. Each applicant must be of good moral character and shall submit letters of reference regarding his or her application. Such letters shall outline the applicant's motivation and employment performance, and the applicant's character and capacity for honesty and impartiality.

(12) Management Ability. Each application shall show managerial skills necessary for the smooth operation of a Court. Such information as the applicant's record of supervising staff, coordinating budget and personnel requirements and verbal communication and writing abilities shall be carefully reviewed by the Judiciary Committee.

(13) Probationary Status Evaluations. A probationary judge shall submit to periodic evaluation of work performance as designated by the Judiciary Committee of the Navajo Tribal Council.

(14) Political Appointments. Each applicant shall be selected and evaluated without regard to political affiliation or association.

## III

The appointment of judges to the Navajo Nation bench is governed by the Navajo Tribal Code. Once a judicial vacancy is declared to exist by the Judicial Branch, a public announcement is made for submission of applications. The contents of the application, including the supporting documents, must conform to 7 N.T.C. § 354. The initial screening of applicants, which includes review of qualifications pursuant to 7 N.T.C. § 354 and interviews, is conducted by the Judiciary Committee of the Navajo Tribal Council. The power of initial screening is given to the Judiciary Committee by 7 N.T.C. §§ 355, 354(a) and 2 N.T.C. § 572(1) .

The Judiciary Committee then submits a list of names of the most qualified applicants to the Chairman of the Navajo Tribal Council. Pursuant to 7 N.T.C. § 355, the Chairman of the Navajo Tribal Council must appoint the potential judge "from among those recommended by the Judiciary Committee of the Navajo Tribal Council." See also 2 N.T.C. § 572(l).

The Chairman has no independent authority to appoint a person as judge who has not been screened and recommended by the Judiciary Committee. As a collateral matter, the Advisory Committee has absolutely no authority to either recommend, not recommend, confirm, or on its own appoint a person as judge of the Navajo Nation. All recommendations for appointment of judges are initiated by the Judiciary Committee. 2 N.T.C. §§ 572(l), 574(b)(l).

The Advisory Committee at one time had the power "to give final confirmation of appointments to ... Courts and all the other appointments which by exist-

ing law must be confirmed by the Navajo Tribal Council...." 2 N.T.C. § 343(b) (17); *Navajo Tribal Council Resolution* CJA-1-81 (Jan. 28, 1981). This power, as it relates to the courts, however, was superseded by the Judicial Reform Act of 1985, 7 N.T.C. §§ 101 - 853. Title 7, N.T.C. § 852 specifically repealed 2 N.T.C. § 343(b) (17). The confirmation of judges now rests exclusively with the Navajo Tribal Council pursuant to the Act .

The Chairman's appointee (from the list recommended by the Judiciary Committee) is sent to the Navajo Tribal Council for confirmation. 7 N.T.C. §§ 251, 355(a). Confirmation by the Navajo Tribal Council is complete when the judge receives a majority vote from those delegates voting during a duly called session of the Navajo Tribal Council. See 2 N.T.C. § 172.

The Navajo Tribal Code clearly gives the Navajo Tribal Council, and not the Chairman or Advisory Committee, the final say on which individuals are to serve as judges of the Navajo Nation. The Navajo Tribal Council also has the power to deny a judgeship to any person that the Chairman appoints as a judge. Any judge appointment made by the Chairman or the Advisory Committee without following the laws contained in the Navajo Tribal Code is illegal and shall not be recognized as valid.

The Chairman and the Advisory Committee also have no authority to recall retired or removed judges back to service. The legally appointed Chief Justice has the authority to recall only retired judges to the bench temporarily to help relieve congestion in the courts. 7 N.T.C. § 353(i). This is part of the Chief Justice's administrative duties as supervisor of Navajo Nation judges and as the head of the Judicial Branch. 7 N.T.C. § 371.

Judges who have been removed for misconduct have no status as retired judges. Thus, they can not be recalled for temporary duty on the Navajo Nation bench. 7 N.T.C. § 353(c) and (j). A probationary judge who has been removed by the Chairman upon recommendation of the Judiciary Committee also has no status as retired judge and cannot be recalled to service. 7 N.T.C. § 355(d).

The law is clear that the Chairman and the Advisory Committee have no authority to appoint judges to the Navajo bench solely on their own initiatives.